UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN RICKS INDIVIDUALLY AND IN HER CAPACITY AS PARENT, GUARDIAN AND NEXT FRIEND OF HER CHILDREN, KR AND HR, MINORS, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON SETH RICKS, DECEASED<br><br>VERSUS<br><br>ROLLS-ROYCE CORPORATION | * * * * * * * * * * * * * | CIVIL ACTION<br><br>NO. 16-2593<br><br>JUDGE NANNETTE JOLIVETTE BROWN<br><br>MAG. JUDGE MICHAEL B. NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF ROLLS-ROYCE CORPORATION'S FED. R. CIV. P. 12(b)(2) AND 12(b)(3) MOTION TO DISMISS

Defendant Rolls-Royce Corporation, through undersigned counsel, has moved this Court to dismiss plaintiff's Original Complaint [R. 1] pursuant to F.R.Civ.P. 12(b)(2) and F.R.Civ.P. 12(b)(3). This Court lacks personal jurisdiction over Rolls-Royce in this case; even if personal jurisdiction did exist, which it does not, venue is improper in this district. In accord with LR 7.4 and LR 56.1, Rolls-Royce submits this Memorandum in Support and a Statement of Uncontested Facts to support these motions.

I.  BACKGROUND OF THE ACCIDENT

On March 30, 2015, plaintiff's decedent Brandon Seth Ricks – a resident of Oklahoma – piloted a Bell Helicopter *in Mississippi* for the United States Forest Service to conduct a controlled burn by aerial ignition. Complaint, ¶¶ 1, 6. After losing power, according to

plaintiff's allegations, the helicopter crashed into the De Soto National Forest in Mississippi, killing pilot Ricks, one other person, and injuring another. *See* Original Complaint, ¶ 6.

Plaintiff Colleen Ricks' lawsuit against Rolls-Royce is the third one to arise from this Mississippi helicopter crash. Passenger Brendan Mullen filed the first action, *Brendan Mullen v. Bell Helicopter Textron, et al.*, civil action number 15-158, in the United States District Court for the Southern District of Mississippi. Mullen sued the following defendants: Bell Helicopter Textron, Inc. (the helicopter's manufacturer); Rolls-Royce (the alleged engine manufacturer); HLW Aviation, LLC (the Georgia owner of the helicopter); and T&M Aviation (the lessor/operator of the helicopter). As discussed *infra*, Rolls-Royce moved to dismiss Mullen's complaint because the Mississippi federal district court lacked personal jurisdiction over Rolls-Royce. Based upon the controlling United States Supreme Court and Fifth Circuit precedent, the presiding Judge agreed and dismissed Mullen's claims against Rolls-Royce without prejudice. *See Mullen v. Bell Helicopter, Inc., et al*, --- F.Supp.3d --- , 2015 WL 5882057 (S.D. Miss. Aug. 17, 2015) (Guirola, CJ), exhibit "1."

Plaintiff Ricks filed, in this Court, the second suit to arise from this accident entitled *Colleen Ricks, Individually and in her capacity as parent, guardian and next friend of her children, KR and HR, minors, and as personal representative of the Estate of Brandon Seth Ricks, deceased v. Cadorath Aerospace Lafayette, LLC; H&H Turbine Services, L.L.C.; and Rotocraft Leasing Company, LLC*, civil action 15-6686. She sued Cadorath Aerospace Lafayette, LLC; H&H Turbine Services, L.L.C.; and Rotocraft Leasing Company, LLC, alleging those three companies had conducted various repairs and maintenance work on the helicopter. On March 31, 2016, plaintiff filed this third, separate, lawsuit arising from this accident against

Rolls-Royce. *See* Original Complaint [R. 1]. Originally allotted to Judge Fallon, this action was transferred to this section. *See* Order [R. 5].

As set forth more fully below, and like the Mississippi federal court, this Court lacks personal jurisdiction over Rolls-Royce *for this accident*. First, general jurisdiction is lacking because Rolls-Royce is not incorporated in Louisiana nor does it have its principal place of business in this State. Second, this Court lacks specific jurisdiction over Rolls-Royce because whatever contacts Rolls-Royce may otherwise have with Louisiana is unrelated to this specific case. Furthermore, Rolls-Royce did not design, manufacture, sell, or distribute the helicopter engine made the basis of plaintiff's action. Instead, General Motors manufactured the engine in Indiana in 1980. Finally, even if personal jurisdiction over Rolls-Royce existed, which it does not, venue would be otherwise improper in this district. Thus, plaintiff's Original Complaint should be dismissed without prejudice.

II. THE PLAINTIFF FAILS TO SHOW HOW THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER ROLLS-ROYCE IN THIS ACTION

    A. *Plaintiff must establish personal jurisdiction exists over Rolls-Royce in this Court for this case*

Whether personal jurisdiction over Rolls-Royce exists here is the threshold matter to decide before proceeding further. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 784 (1999). Plaintiff bears the burden to establish personal jurisdiction exists over Rolls-Royce in this case. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012); *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648). She fails to meet her burden. But even if plaintiff's Complaint made a *prima-facie* showing of personal jurisdiction (which it does not), the Court does not credit conclusory allegations lacking foundational support or draw tortured

inferences. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001); *Hills v. Brinks, Inc.*, 2008 WL 243944, *2 (E.D. La. Jan. 25, 2008) (Vance, J.). Instead, this Court looks to pleadings, affidavits, oral testimony, or discovery responses. *Ambraco, Inc. v. Clipper Faith MV*, 570 F.3d 233, 238 (5th Cir. 2009); *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008); *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). Also, even if jurisdiction may exist over other entities (here defendants in plaintiff's separate, if related, lawsuit), this fact does not suffice to establish jurisdiction over Rolls-Royce. *See, e.g., Rush v. Savchuk*, 444 U.S. 320, 328-29 (1980); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

B. *Plaintiff's bare jurisdictional allegations*

Plaintiff's jurisdictional allegations are sparse. Plaintiff incants diversity jurisdiction under 28 U.S.C. § 1332, but offers nothing to explain how Rolls-Royce is subject to *personal* jurisdiction in this State over a Mississippi helicopter crash. She appears to base personal jurisdiction over Rolls-Royce on her nebulous allegation that Rolls-Royce conducts some non-specified business with one of the defendants (Cadorath Aerospace Lafayette, LLC) she named in her separate lawsuit:

> 2. Defendant ROLLS-ROYCE CORPORATION (hereinafter, "Rolls-Royce"), is a business corporation organized and existing under the laws of the State of Delaware, with its principle place of business at 2001 S. Tibbs Avenue, Indianapolis, Indiana 46241, and doing business in Louisiana in that, on information and belief, Rolls-Royce contracts with and provides support to Cadorath Aerospace Lafayette, LLC ("Cadorath") – a business located in Broussard, Louisiana – in connection with Cadorath's business as an Authorized Repair Facility for Rolls-Royce helicopter engines, including the model 250-C30P turbine engine installed on the helicopter made the basis of this suit, which was serviced by Cadorath in Broussard, Louisiana on or about November 23, 2009.

4

*See* Complaint, ¶ 2.[1]

United States Supreme Court and Fifth Circuit decisions foreclose any such argument to extend personal jurisdiction over Rolls-Royce in this Court for this case.

III. THIS COURT LACKS PERSONAL JURISDICTION OVER ROLLS-ROYCE FOR THE CLAIMS PLAINTIFF ASSERTS

For seven decades, *International Shoe* served as the touchstone of due process. *International Shoe* held an out-of-state corporation must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The "minimum contacts" test of *International Shoe* developed two branches: "general jurisdiction" and "specific jurisdiction." *See Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 754 (2014); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).

The United States Supreme Court clarified the limits of due process for both "general" and "specific" jurisdiction in three recent decisions: *Daimler*, 134 S.Ct. 746 (general jurisdiction); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846 (2011) (general jurisdiction); and *Walden v. Fiore*, --- U.S. ---, 134 S. Ct. 1115 (2014) (specific jurisdiction). Under the holdings of those cases, extending personal jurisdiction over Rolls-Royce here exceeds due process limitations.

---

[1] Because this Court lacks personal jurisdiction over Rolls-Royce, venue here too is improper. But even *if* this Court could exercise personal jurisdiction over Rolls-Royce for this Mississippi crash through whatever unidentified contacts Rolls-Royce may have with Cadorath (which it cannot), venue would be improper here. By plaintiff's own description, Cadorath in located in Broussard, Louisiana, which is a city in Lafayette Parish. Lafayette Parish is located in the Western, not Eastern, District Court of Louisiana. 28 U.S.C. § 98(c). *See also* 28 U.S.C. § 1391(d). To preserve the defense, Rolls-Royce objects to venue as being improper under F.R.Civ.P. 12(b)(3).

A. *This Court does not have general jurisdiction over Rolls-Royce in this case*

In *International Shoe*, the Supreme Court recognized general jurisdiction could extend over a foreign corporation where its activities in a particular state "were neither irregular nor casual [but] were systematic and continuous throughout the years in question [and] resulted in a large volume of interstate business" and the "obligation . . . sued upon arose out of those very activities." *International Shoe*, 326 U.S. at 320. In the following sixty-five years, the Court addressed general jurisdiction again only twice, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (upholding general jurisdiction) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) (rejecting general jurisdiction a case brought in Texas against a Columbian helicopter company being sued for a death occurring in a helicopter crash in Peru). Lower federal courts and state courts meanwhile grappled to fashion standards to justify a state's exercise of general jurisdiction over out-of-state corporations.

Five years ago, the Supreme Court decided *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846. In *Goodyear*, the plaintiff premised jurisdiction in North Carolina on the foreign tire manufacturer's distribution of tires into the stream of commerce. The Supreme Court rejected a "sprawling view of general jurisdiction" because to adopt such a view would render "any substantial manufacturer or seller of goods . . . amenable to suit, on any claim for relief, wherever its products are distributed." *Id*., 2856. Instead, said the Court, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Id.*, 2851.

*Goodyear* clarified that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. "For an individual, the paradigm forum for

the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, 2853-2854. Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Simple jurisdictional rules . . . promote greater predictability."). These places give a plaintiff recourse to at least one clear and certain forum where a corporate defendant may be sued on any and all claims.

Most recently, in *Daimler AG v. Bauman*, 134 S.Ct. 746, the Supreme Court further illuminated the contours of the Court's use of the phrase "essentially at home in the forum state" to restrict further a court's general jurisdiction over a foreign defendant, such as Rolls-Royce here.

In *Daimler,* plaintiffs sued the German company Daimler for the conduct of an Argentine subsidiary, relying on general jurisdiction. *Id.*, 751. To consider if Daimler was subject to the California court's general jurisdiction, the Supreme Court attributed the California contacts of Daimler's American subsidiary MBUSA to Daimler. *Id.*, 758-60. And MBUSA, although not headquartered or incorporated in California, enjoyed a very substantial California presence: MBUSA operated several California offices; MBUSA was the largest supplier of luxury cars to the California market; *id.*, at 752; and, Daimler's annual sales in California through MBUSA totaled $4.6 billion in 2004 alone. *Id.*, at 767 (Sotomayor, J., concurring).

Notwithstanding MBUSA's yearly multi-billion dollar business the Supreme Court attributed to Daimler, the Court found Daimler's activities in California insufficient to establish general jurisdiction. Rejecting plaintiffs' argument that the Court should "approve the exercise of general jurisdiction in every State in which a corporation 'engages in substantial, continuous,

7

and systematic course of business,'" the Supreme Court held such a "formulation . . . is unacceptably grasping." *Id.*, 761.

*Daimler* held general or all-purpose jurisdiction is available "*only* when the corporation's affiliations with the State in which the suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler,* 134 S.Ct. at 751 (italics added and internal quotations omitted). Accordingly, *Daimler* forecloses any unspoken reliance by plaintiff upon a stream-of-commerce theory to establish general jurisdiction over Rolls-Royce. *See* Tanya J. Monestier, *Where is Home Depot "At Home"? Daimler v. Bauman and the End of Doing Business Jurisdiction*, 66 Hastings L.J. 233, 265 (2014) ("[d]oing business jurisdiction is a dead letter."). Post-*Daimler*, it is not enough to show Rolls-Royce may do some business in Louisiana to establish general jurisdiction. *Also see Monkton Ins. Serv., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."); *Carpenter v. Sikorsky Aircraft Corporation*, 101 F.Supp.3d 911, 923 (C.D. Cal. 2015) ("Plaintiffs have provided no evidence showing that this in an 'exceptional case' in which general jurisdiction may be exercised in a state that is not the principal place of business or state of incorporation.").

Rolls-Royce is a Delaware corporation with its principal place of business in Indianapolis, Indiana, which plaintiff acknowledges. *See* Complaint, ¶ 2. Applying *Daimler* here, Rolls-Royce is "at home" in Delaware or Indiana but is not "at home" in Louisiana. Thus, general jurisdiction over Rolls-Royce in this forum does not exist. Indeed, as discussed *supra*, in a companion action brought by a passenger-survivor of the same crash made the basis of this suit in federal court in Mississippi – where the helicopter flew and crashed – Chief Judge Louis Guirola, Jr., granted Rolls-Royce's Rule 12(b) motion. The Judge dismissed plaintiff Mullen's

case because the Judge found personal jurisdiction lacking over Rolls-Royce notwithstanding the crash occurred in Mississippi:

> Because the Court has determined that it lacks personal jurisdiction over Rolls-Royce Corporation in this case, Rolls-Royce Corporation's Motion to Dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(2) and Plaintiffs claims against Rolls-Royce Corporation dismissed without prejudice.

*See Mullen v. Bell Helicopter, Inc., et al*, 2015 WL 5882057, exhibit "1." If the federal court, sitting in the very state where the crash occurred, concluded general jurisdiction could not lie over Rolls-Royce in that forum, certainly general jurisdiction cannot lie over Rolls-Royce in this Court – one wholly remote from the site of the crash.[2] Thus, this Court lacks general jurisdiction over Rolls-Royce.

    B.    *Specific jurisdiction over Rolls-Royce in this Court is also lacking*

In *Walden v. Fiore*, 134 S.Ct. 1115, the Supreme Court made clear the Rolls-Royce's relationship with Louisiana must arise out of connections that Rolls-Royce, not any other entity (including Cadorath Aerospace), has with the forum. Thus, to establish specific jurisdiction over Rolls-Royce, plaintiff must present facts to tie Rolls-Royce's *contacts with Louisiana* to the controversy – a crash occurring solely within Mississippi – before this Court.[3] Plaintiff has not done so in her pleadings, and she will be unable to do so in responding to Rolls-Royce's motion.

"[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 131 S.Ct. at 2851 (citation

---

[2] Plaintiff and her children here do not reside in Louisiana. Rather, according to her allegations, plaintiff and her minor children, like her late husband – the helicopter pilot – reside in Oklahoma. *See* Complaint, ¶ 1.

[3] Because aircraft are flown all over the United States as well as around the world, it is well-established that specific jurisdiction over Rolls-Royce in Louisiana cannot be based upon "the unilateral activity of the plaintiff" or of any other party, such as the crashed helicopter's owner or operator or repairer. *See, e.g., Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987), *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

omitted). This type of jurisdiction requires the suit to "arise out of or relate to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (litigation must "result[ ] out of or relate to those [forum-state] activities]; *Alpine View Company Ltd. v. Atlas COPCO AB*, 205 F.3d 208, 215 (5th Cir. 2000) ("Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the form *and the litigation results from alleged injuries that arise out of or relate to those activities*.") (Italics and underlying added). A "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction over a foreign defendant. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

In other words, plaintiff must link suit-related conduct" by Rolls-Royce in Louisiana to the facts of her case before this Court can exercise specific jurisdiction. *Walden*, 134 S. Ct. at 1121; *also see Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010) ("Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action"); *Patterson v. Blue Offshore BV*, 2015 WL 4096581, * 17 (E.D. La. July 6, 2015) (Brown, J.) ("[E]ven assuming that [Rolls-Royce] has purposefully directed its activities at [Louisiana], it would still be necessary to consider whether [plaintiff Ricks'] claims against it result from injuries arising from, or related to, [Rolls-Royce's] activities in [Louisiana]."), *appeal filed and pending*, Aug. 5, 2015 (No. 15-30690). This she has not done. Even assuming Rolls-Royce directed some activity at Louisiana though plaintiff's vaguely-described contacts

10

with Cadorath, plaintiff has not identified how her claims against Rolls-Royce, arising from this Mississippi helicopter crash, arise from Rolls-Royce's activities in Louisiana.[4]

The Fifth Circuit applies a three-part required framework to analyze the exercise of specific personal jurisdiction: (1) whether Rolls-Royce has minimum contacts with Louisiana, *i.e.*, whether it purposely directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities here; (2) whether plaintiff's causes of action arises out of or results from Rolls-Royce's Louisiana-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). To satisfy due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

This Court's ability to exercise specific jurisdiction over Rolls-Royce on the sparse facts plaintiff alleges founders because the Fifth Circuit's second required element – plaintiff's cause of action must arise out of or result from Rolls-Royce's Louisiana-related activity – is missing.

The Fifth Circuit has framed the second prong of the test to require plaintiff's cause of action must arise out of or result from the defendant's forum-related contacts. *In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 549 (5th Cir. 2014); *ITL Int'l,*

---

[4] Cadorath Aerospace repairs, modified, and overhauls helicopters and their engines and component parts, including those manufactured by Bell Helicopter, Rolls-Royce, Pratt & Whitney, and Sikorsky. *See* Cadorath Webpage, exhibit "2." Cadorath also sells, among other products, new and used Rolls-Royce parts. *Id.* Even assuming Cadorath sells Rolls-Royce parts in Louisiana, this is insufficient to satisfy plaintiff's requirement to show her claims "relate to" Rolls-Royce making such sales in this forum that are tied to her claims. She does not allege Cadorath installed any new or used Rolls-Royce part during the 2009 overhaul, let alone that such part failed or caused the accident made the basis of her claim. *See, e.g., Pitts v. Ford Motor Company*, 127 F.Supp.3d 676 (S.D. Miss. 2015) ("That Ford sells vehicles in Mississippi, without more, is insufficient to find that Plaintiffs' claims "relate to" such sales, and Plaintiffs have offered no evidence showing the number of Ford Fusion automobiles sold in Mississippi. In addition, Plaintiffs did not purchase their Fusion in Mississippi, and there is no evidence that Plaintiffs' injuries otherwise arose out of the sale of a Ford automobile in Mississippi.").

*Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006); *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010). Under this element, plaintiff must show her cause of action arises out of or relates to the Louisiana-related activities of Rolls-Royce – whatever those might be. Plaintiff cannot satisfy this requirement because she has alleged nothing nor presented any facts to establish how her cause of action arises out of or results from Rolls-Royce's undetailed Louisiana-related contacts. Nowhere in her Complaint does plaintiff connect any supposed Rolls-Royce contacts with Louisiana to her claim arising from the Mississippi helicopter crash – a flight that started at the Dean Griffin Memorial Airport in Wiggins, Mississippi, and ended near Saucier, Mississippi. *See* NTSB Preliminary Report, exhibit "3."[5] Plaintiff's stray mention of Cadorath Aerospace and its reported "service" of the helicopter engine *seven years ago* is untethered to whatever claim she attempts to assert against Rolls-Royce. *See* Complaint [R. 1], ¶ 2.[6]

---

[5] Because this NTSB Preliminary Report does not contain the Board's probable cause findings, it is not inadmissible under 49 U.S.C. § 1154(b) and/or 49 CFR §835.2.

[6] In plaintiff Ricks' first-filed lawsuit over this accident against Cadorath and others, civil action number 15-6686 in this Court, plaintiff alleges Cadorath negligently performed maintenance work on the helicopter back in 2009:

> On information and belief, on or about June 25, 2010, Defendant Rotorcraft Leasing through its employees and/or agents, negligently performed maintenance work on the Helicopter's engine at its facility in Broussard, Louisiana, including but not limited to repairs to the engine's turbine relating to the Helicopter's exhaust collector, and otherwise inspecting the Helicopter's engine. The Helicopter's "Inspection – Maintenance – Overhaul Record" for its "Turbine Assembly" (the Helicopter's "Engine Log") signed by a Rotorcraft Leasing agent on or about June 25, 2010, states "C/W [complied with] repairs of turbine due to crack[ed] exhaust collector IAW [in accordance with] mtc [maintenance] manuals 14W3." The Helicopter's Engine Log further reflects that Rotorcraft Leasing assigned work order number R22176 to this work.

*See* Plaintiff's First Amended Complaint for Damages, ¶ 12, exhibit "4." In this allegation, plaintiff Ricks does not mention Rolls-Royce at all; nor, in her separate Original Complaint against Rolls-Royce, does plaintiff relate the 2009 maintenance work Cadorath performed to Rolls-Royce in any manner. (Without wading into the merits, Rolls-Royce observes that plaintiff also alleged another defendant, Rotocraft Leasing, subsequently performed maintenance on the helicopter in 2010, and still later another defendant, H&H, performed further serviced the helicopter in 2014. Presumably, after Cadorath's 2009

In sum, plaintiff's Complaint provides no facts to tie whatever contact Rolls-Royce may have with Broussard-based Cadorath to this accident. She certainly fails to identify any contact by Rolls-Royce in this forum that relates to her cause of action. *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) ("Cataphora did contract to provide litigation services for the MDL in Louisiana. But the connection between that contract and Chadderdon's allegedly defamatory statements is too attenuated to support bringing him into Louisiana court for defamation). Simply put, plaintiff does not allege any facts to carry her burden to allow this Court to exercise specific jurisdiction over Rolls-Royce for a Mississippi helicopter crash. Specific jurisdiction over Rolls-Royce in this Court in this case does not exist.

IV. A "STREAM OF COMMERCE" ARGUMENT WILL AVAIL PLAINTIFF NOTHING

Although plaintiff did not invoke a "stream of commerce" theory to support personal jurisdiction over Rolls-Royce, if she were to do, so such a theory would fail as a matter of law and fact. To find specific jurisdiction under a "stream-of-commerce" theory, a manufacturer must introduce its product into the "stream of commerce" *and* the product must find its way into the forum through the manufacturer's purposeful conduct. *See, e.g., Ainsworth v. Moffett Engineering Ltd.*, 716 F.3d 174, 175 and 177 (5th Cir.), *cert. denied*, --- U.S. ---, 134 S.Ct. 644, 187 L.Ed.2d 420 (2013) (forklift that killed decedent entered the state directly through the

---

work, the helicopter flew satisfactorily and uneventfully for six years and the two later service providers apparently found nothing amiss with the prior Cadorath work – at least, given plaintiff's allegation and the facts known – this would appear to be the case).

In any event, Courts have long presumed the institutional independence of *related* corporations in declining to attribute the conduct of one corporation to another for purposes of evaluating a corporation's contacts with the forum state to determine whether personal jurisdiction is warranted. *See, e.g., Cannon Mfg. Co. v. Cuddy Packing Co.*, 267 U.S. 333 (1925); *Dickenson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1999). Certainly if Courts do not attribute the actions of affiliated sister-companies to each other for jurisdictional purposes, then attributing Cadorath's presence in Louisiana to Rolls-Royce to establish personal jurisdiction would not pass constitutional muster.

foreign manufacture's distribution network). To extend "stream of commerce" specific jurisdiction over a non-resident manufacturer, the arrival of the product into the forum must result from the manufacturer's intentional acts, not the fortuitous acts of third parties. *See, e.g., Eddy v. The Printers House (P) Limited*, 627 Fed.Appx. 323, 327 (5th Cir. 2015) ("The fact that the original buyer of the press sold it to another entity, clearly establishes that the press found its way into Texas not through any intentional act taken by TPH but through the unilateral activity of third parties"); *Irvin v. Southern Snow Mfg., Inc.*, 517 Fed.Appx. 229, 232 (5th Cir. 2013) (finding no specific jurisdiction in Mississippi where Louisiana defendant sold snowball machine to Louisiana customer in Louisiana and Plaintiff unilaterally transported machine into Mississippi and suffered injury in Mississippi); *Istre v. Montoco Offshore, Inc.*, 2016 WL 1110227, * 4 (E.D. La. March 22, 2016) (Triche-Milazzo, J.) (*citing Eddy v. Printers House*); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 106 (3rd Cir. 2009). *Also see Seiferth v. Helicopters Atuneros, Inc.*, 472 F.3d 266, 274 fn 4 (5th Cir. 2006) (a foreign corporation's general hope that a party will use a product in a general region is too remote an aspiration to qualify as purposeful availment in a specific state); *Bell Helicopter Textron Inc. v. Heliqwest International, Ltd.*, 385 F.3d 1291, 1298 (10th Cir. 2004) (same). Here, plaintiff fails to allege that Rolls-Royce purposefully caused any product it designed, manufactured, sold, or delivered – connected with her cause of action – to arrive in Louisiana. Nor can she, because such facts simply do not exist, as detailed below.

A. *The history of the Series 250-C30P engine at issue*

As the attached Declaration Pursuant to 28 U.S.C. § 1746 of Scott S. Scheurich, Senior Product Airworthiness Engineer with Rolls-Royce, exhibit "5" establishes, Rolls-Royce did not design or manufacture, let alone sell or ship, the subject engine to Louisiana or to anywhere else.

Instead, another corporation – Detroit Diesel Allison, a former division of General Motors – designed, manufactured, sold, and shipped the 250-C30P engine made the basis of plaintiff's lawsuit. Thus, plaintiff cannot provide a factually-supportable scenario to establish specific jurisdiction over Rolls-Royce in this forum under a "stream-of-commerce" approach.

At the time of the March 30, 2015, Mississippi crash, the Bell helicopter at issue (N50KH) contained an Allison 250-C30P, a turbine engine manufactured by General Motors Corporation's Allison Gas Turbine Division. Allison Gas Turbine built this particular engine, serial number CAE-890314, in Indiana and then shipped it to Sikorsky Aircraft Corporation in Stratford, Connecticut, on June 30, 1980. *See* Declaration, ¶ 7, and its attached exhibit "A" – the "Packing Room Check Sheet Engine 250-C30." Sikorsky then incorporated this engine into a Sikorsky S-76 model helicopter (not the helicopter at issue here) which aircraft Sikorsky sold to Bristow Helicopters, *id*., ¶ 8, headquartered in Houston, Texas.[7]

Separately, Bell built the subject helicopter in 1980 and originally equipped it with a C28B engine – not the one at issue here. *Id.*, ¶ 17. In April 1993, someone (not Rolls-Royce) installed the particular engine in this case into the Bell 206 L-1 helicopter, tail registration number N50KH, and it came to be owned HLW Aviation, L.L.C., a Georgia Company. *Id.*, ¶¶ 178-19.[8] HLW leased the helicopter at issue to T&M Aviation. On its final flight, the helicopter departed from the Dean Griffin Memorial Airport in Wiggins, Mississippi, to assist in

---

[7] Bristow operates major helicopter transportation operations in the North Sea, Nigeria, and the United States Gulf of Mexico. Bristow also operates in other major offshore oil and gas producing regions of the world, including Australia, Brazil, Canada, Russia and Trinidad.

[8] It is not uncommon for helicopter owners and operators to switch out helicopter engines and other component parts over their working lives. *See, e.g., Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389, 390 (5th Cir. 1991) ("From 1980 through 1983, PHI routinely switched the floats from their original aircraft to other AS-350 helicopters in its fleet. During this time, float S/N 0074 was removed and reinstalled at least four times.").

a U.S. Forest Service controlled burn. For reasons not-yet-known, the helicopter crashed about one hour after takeoff near Saucier, Mississippi. *See* Complaint, ¶ 6. Both HLW, the helicopter's owner; and T&M, the lessor, along with Bell Helicopter Textron Inc., were co-defendants with Rolls-Royce in the Mississippi lawsuit discussed *supra, Mullen v. Bell Helicopter, Inc., et al*, 2015 WL 5882057, where the Court dismissed Rolls-Royce for lack of personal jurisdiction.[9]

Even if plaintiff had asserted "stream-of-commerce" jurisdictional allegations against Rolls-Royce (which she did not), the facts are nonexistent to extend specific jurisdiction over Rolls-Royce in this case in this Court. And, should plaintiff request jurisdictional discovery, she must demonstrate her need for such discovery. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). Plaintiff, however, "is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id*; *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (denial of jurisdictional discovery where plaintiff failed to demonstrate how further discovery could establish jurisdiction). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000). Such is the case here. No amount of fishing will demonstrate plaintiff's

---

[9] In a later ruling the Judge also dismissed HLW Aviation, LLC from the *Mullen* case because the Court lacked personal jurisdiction over HLW too. *See Mullen v. Bell Helicopter, Inc., et al*, 2015 WL 6755384 (S.D. Miss. Nov. 4, 2015) (Guirola, CJ). The Judge also dismissed Bell Helicopter Textron Inc. from the Mississippi litigation pursuant to F.R.Civ.P. 12(b)(6). *See* "Memorandum Opinion and Order Granting Bell Helicopter Textron, Inc.'s Motion to Dismiss," exhibit "6."

causes of action "arise from or relate to" Rolls-Royce's Louisiana-related contacts, whatever they may be.[10]

Succinctly stated, this Court lacks specific jurisdiction over Rolls-Royce *in this case* based upon the facts plaintiff alleges and upon the undeniably-true facts surrounding this Mississippi helicopter crash. Plaintiff ties nothing Rolls-Royce may have purposefully done in this forum (if anything) to any of the events at issue in this controversy. Based upon *Walden* and

---

[10] Although not germane to the jurisdictional question, on the merits – as a matter of law – Rolls-Royce cannot be held liable for an engine it did not design, manufacture, sell, or deliver, as recounted in Mr. Scheurich's Declaration.

On December 1, 1993, General Motors sold the assets of its Allison Turbine Division to AEC Acquisition Corp. ("AEC"), which later changed its name to Allison Engine Company in an all-cash transaction. The Asset Purchase Agreement expressly provided General Motors retained all liabilities, obligations, and commitments with respect to personal injury, wrongful death, or property claims arising out of an accident allegedly caused by an engine "sold or leased" by General Motors before December 1, 1993, and Allison would have no liability for such claims. *See Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 117 (Del. Super. Ct. 2014); *also see* Declaration, ¶ 10, exhibit "5" and its attached exhibit "B" – a redacted, relevant excerpt of the 1993 Asset Purchase Agreement between General Motors and AEC Acquisition Corp.

On March 24, 1995, over a year after General Motors' sale of its Allison Turbine Division assets to AEC, Rolls-Royce plc purchased the stock of Allison Engine Company. Rolls-Royce first began manufacturing, selling, and supply turbine engines for helicopters in March 1995. In April 2000, Allison Engine Company, Inc., changed its name to Rolls-Royce Corporation. *See* Declaration of Scheurich, ¶¶ 14 and 15.

Because the subject engine was sold to Bell almost thirteen years before December 1, 1993, and because General Motors expressly retained all liabilities, obligations, and commitments with respect to personal injury, wrongful death, or property claims arising out of an accident allegedly caused by an engine sold or leased before that date, Rolls-Royce cannot be held liable to plaintiff even if she chooses to sue in a forum having personal jurisdiction over Rolls-Royce. As the exhibits demonstrate, Rolls-Royce plc acquired only assets and not liabilities when it purchased the assets of Allison Engine Company from ACE. Under the governing general rules a corporation (like Rolls-Royce) that acquires the assets of another corporation does not also acquire the debts and liabilities of the original company. *Huff v. Shopsmith, Inc.*, 786 So.2d 383, 386 (Miss. 2001); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985); *Johnson v. Pneumo Corporation*, 652 F.Supp. 1402, 1405 (S.D. Miss. 1987); *also see Laugelle*, 88 A.3d 110. And, that rule applies here. Rolls-Royce did not acquire the pre-December 1, 1993, liabilities of Allison Engine Company and hence is not liable to plaintiff for any alleged defects in the engine. *See Laugelle*, 88 A.3d at 121 (where court agreed that because the engine was delivered to Bell Helicopters before December 1, 1993, General Motors, not Rolls-Royce, would be the proper party to answer for plaintiff's wrongful death claims.).

other specific jurisdiction decisions, this Court should conclude specific jurisdiction over Rolls-Royce in this Court over this case is lacking.

V.     CONCLUSION

Because this Court lacks either general or specific jurisdiction over Rolls-Royce to adjudicate plaintiff's claims, this Court should dismiss plaintiff's action against Rolls-Royce without prejudice.[11]  In the alternative, this Court should transfer plaintiff's action to the United States District Court for the Southern District of Indiana, a forum where plaintiff could have brought suit against Rolls-Royce pursuant to 28 U.S.C. § 1391(b).  *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013); *Caldwell v. Palmetto State Savings Bank*, 811 F.2d 916, 919 (5th Cir. 1987); *Romero v. North Trail RV Center*, 2010 WL 3724337 (W.D. La. Aug. 20, 2010) (Hanna, MJ), *adopted at* 2010 WL 3724241 (W.D. La. Sep 15, 2010) (Doherty, J.).

                Respectfully Submitted:

                s/ *Kevin R. Tully*
                **KEVIN R. TULLY -Bar #1627, T.A.**
                **krtully@christovich.com**
                **H. CARTER MARSHALL - Bar #28136**
                **hcmarshall@christovich.com**
                **Christovich & Kearney, LLP**
                601 Poydras Street, Suite 2300
                New Orleans, Louisiana  70130
                Telephone:  504-561-5700
                **Attorneys for Rolls-Royce Corporation**

---

[11] As noted at footnote 1 *supra*, even if personal jurisdiction existed here, which it does not, venue in this district is improper.

# CERTIFICATE

I hereby certify that a copy of the forgoing has been filed via CM/ECF for electronic distribution to all counsel of record on the 20th of May 2016.

*s/ Kevin R. Tully*
**KEVIN R. TULLY**
**H. CARTER MARSHALL**

4812-3927-3520, v. 2